ESTATE OF HERMAN KAHN, DECEASED, GERTRUDE KAHN, JACOB C. ABRAMSON AND ARTHUR PELIKOW, EXECUTORS, AND GERTRUDE KAHN, INDIVIDUALLY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3860–67. Filed September 20, 1973.

*John S. Nolan, Robert L. Moore II, Arthur Pelikow, Scott A. Dahlquist,* and *Jacob C. Abramson,* for the petitioners.
*Michael Frosch* and *Gerald Backer,* for the respondent.

### OPINION

GOFFE, *Judge:* On June 27, 1973, this Court entered a decision pursuant to our opinion filed on December 4, 1972. Petitioners have filed a motion to approve a bond to stay assessment and collection pending review of our opinion by the U.S. Court of Appeals, such bond to be secured by collateral instead of a surety.

In our decision we determined deficiencies in income tax due from petitioners for the taxable years 1956, 1957, and 1958 aggregating $618,746.62, and additions to the tax under the provisions of section 6653(b) of the Code [1] due from petitioners aggregating $344,744.28.

Petitioners, in their motion, allege that because of the size of the deficiencies in tax and the value of the assets owned by petitioners, they are unable to secure a surety. They ask the Court to accept in lieu of a surety a pledge of collateral consisting of corporate securities and a secured promissory note. They recite hardships that will result if the relief they seek is not granted, such as sale of stocks and bonds at a time when the market is depressed and loss of the sole sources of support of petitioner Gertrude Kahn, a widow.

Petitioners ask that the amount of the bond be fixed at $1,237,493.24.

Petitioners and respondent disagree on two points: (1) The amount of the bond required, and (2) the nature of the collateral that this Court can accept in lieu of a surety on the bond.

Both of the issues are controlled by section 7485 of the Internal Revenue Code of 1954, as amended, which is as follows:

SEC. 7485. BOND TO STAY ASSESSMENT AND COLLECTION.

(a) UPON NOTICE OF APPEAL.—Notwithstanding any provision of law imposing restrictions on the assessment and collection of deficiencies, the review under

---

[1] All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

section 7483 shall not operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Tax Court unless a notice of appeal in respect of such portion is duly filed by the taxpayer, and then only if the taxpayer—

> (1) on or before the time his notice of appeal is filed has filed with the Tax Court a bond in a sum fixed by the Tax Court not exceeding double the amount of the portion of the deficiency in respect of which the notice of appeal is filed, and with surety approved by the Tax Court, conditioned upon the payment of the deficiency as finally determined, together with any interest, additional amounts, or additions to the tax provided for by law, or
>
> (2) has filed a jeopardy bond under the income or estate tax laws.

If as a result of a waiver of the restrictions on the assessment and collection of a deficiency any part of the amount determined by the Tax Court is paid after the filing of the appeal bond, such bond shall, at the request of the taxpayer, be proportionately reduced.

> (b) Cross References.—
>
> (1) For requirement of additional security notwithstanding this section, see section 7482(c)(3).
>
> (2) For deposit of United States bonds or notes in lieu of sureties, see 6 U.S.C. 15.

It is customary for this Court to set the amount of the bond equal to the deficiency in tax plus additions to the tax and interest from the date of filing the return to a date $2\frac{1}{2}$ years from the date the notice of appeal is required to be filed. *Barnes Theatre Ticket Service, Inc.*, 50 T.C. 28 (1968). Because of the length of time interest has accrued on the deficiencies, the application of that rule in this case would require a bond in an amount larger than double the amount of the deficiency in tax and addition to tax, the upper limit prescribed by section 7485(a)(1). Accordingly, the amount of the bond in this case shall be set at double the amount of the deficiency. The parties disagree on what the term "deficiency" means in this context. Petitioners contend that it means only the deficiency in tax. Respondent contends that it means deficiency in tax and any addition to tax. We held in *Barnes Theatre Ticket Services, Inc., supra*, that in setting the amount of the bond, it was our customary practice to make the bond adequate to cover not only the deficiency in tax and interest but also the addition to tax. We conclude that the same practice is applicable to the limitation on the maximum amount of the bond. The term "deficiency" is defined as the amount of "tax" imposed by subtitle A of the Internal Revenue Code in excess of the amount shown on the return plus amounts previously assessed less any rebates. Sec. 6211(a). Any reference to "tax" imposed by the Internal Revenue Code (including subtitle A) is deemed to refer to additions to the tax. Sec. 6659(a)(2).

Aside from our holding in *Barnes Theatre Ticket Service, Inc., supra*, and our tracing of the meaning of the word "deficiency" as used in section 7485, we believe that any other construction would not be in harmony with the purpose of section 7485. The purpose of that

section is to protect the United States during the pendency of an appeal so that when the appeal becomes final, there will be adequate security for collection of the amounts finally determined to be owed, if any, by the taxpayer to the U.S. Government. There is no reason to believe that payment of an addition to the tax should not be any less secured than a deficiency in tax is secured.

We hold, therefore, that the amount of the bond shall be set at double the amount of the deficiency in income tax and addition to the tax under the provisions of section 6653(b), or $1,926,981.80.

The second point of disagreement between the parties centers around surety for the bond. Petitioners ask us to accept in lieu of a surety, collateral consisting of marketable stocks, bonds, mutual fund certificates, stocks in closely held corporations, and a promissory note secured by a real estate mortgage.

Respondent contends that section 7485(b)(2) precludes us from accepting in lieu of a surety on the bond, any security other than that prescribed by 6 U.S.C. sec. 15, which permits collateral security consisting solely of obligations of the United States or those guaranteed by the United States.

We agree with respondent. Section 7485(b), set forth in full above, specifically provides for United States bonds or notes in lieu of sureties. Although section 7485(b) does not specify that only U.S. obligations qualify for security, a reading of 6 U.S.C. sec. 15, which specifies in detail which obligations of the United States will qualify, convinces us that section 7485(b) was intended to be exclusive. 6 U.S.C. sec. 15 provides as follows:

SEC. 15. Bonds or notes of United States in lieu of recognizance, stipulation, bond, guaranty, or undertaking; place of deposit; return to depositor; contractors' bonds

Wherever by the laws of the United States or regulations made pursuant thereto, any person is required to furnish any recognizance, stipulation, bond, guaranty, or undertaking, hereinafter called "penal bond", with surety or sureties, such person may, in lieu of such surety or sureties, deposit as security with the official having authority to approve such penal bond, United States Liberty bonds or other bonds or notes of the United States in a sum equal at their par value to the amount of such penal bond required to be furnished, together with an agreement authorizing such official to collect or sell such bonds or notes so deposited in case of any default in the performance of any of the conditions or stipulations of such penal bond. The acceptance of such United States bonds or notes in lieu of surety or sureties required by law shall have the same force and effect as individual or corporate sureties, or certified checks, bank drafts, post-office money orders, or cash, for the penalty or amount of such penal bond. The bonds or notes deposited hereunder, and such other United States bonds or notes as may be substituted therefor from time to time as such security, may be deposited with the Treasurer of the United States, a Federal Reserve bank, or other depositary duly designated for that purpose by the Secretary, which shall issue receipt therefor, describing such bonds or notes so

deposited. As soon as security for the performance of such penal bond is no longer necessary, such bonds or notes so deposited shall be returned to the depositor. In case a person or persons supplying a contractor with labor or material as provided by sections 270a to 270d of title 40 shall file with the obligee, at any time after a default in the performance of any contract subject to said sections 270a to 270d, the application and affidavit therein provided, the obligee shall not deliver to the obligor the deposited bonds or notes nor any surplus proceeds thereof until the expiration of the time limited by said sections 270a to 270d for the institution of suit by such person or persons, and, in case suit shall be instituted within such time, shall hold said bonds or notes or proceeds subject to the order of the court having jurisdiction thereof. Nothing herein contained shall affect or impair the priority of the claim of the United States against the bonds or notes deposited or any right or remedy granted by said sections 270a to 270d or by this section to the United States for default upon any obligation of said penal bond. All laws inconsistent with this section are hereby so modified as to conform to the provisions hereof. Nothing contained herein shall affect the authority of courts over the security, where such bonds are taken as security in judicial proceedings, or the authority of any administrative officer of the United States to receive United States bonds for security in cases authorized by existing laws. The Secretary may prescribe rules and regulations necessary and proper for carrying this section into effect. The term "person" in this section means an individual, a trust or estate, a partnership, or a corporation; the term "Secretary" means the Secretary of the Treasury. In order to avoid the frequent substitution of securities such rules and regulations may limit the effect of this section, in appropriate classes of cases, to bonds and notes of the United States maturing more than a year after the date of deposit of such bonds as security. The phrase "bonds or notes of the United States" shall be deemed, for the purposes of this section, to mean any public-debt obligations of the United States and any bonds, notes, or other obligations which are unconditionally guaranteed as to both interest and principal by the United States. July 30, 1947, c. 390, 61 Stat. 650.

Petitioners argue that we have inherent power as a court established under article I of the Constitution to approve the collateral they offer, citing *Trans World Airlines, Inc.* v. *Hughes*, 314 F. Supp. 94 (S.D.N.Y. 1970). That case involved setting the amount of a supersedeas bond on appeal between private litigants. The United States was not a party and there was no specific statute which prescribed the amount of bond required. Prior to the enactment of the Federal Rules of Appellate Procedure the District Court was given discretion in setting the amount of the bond. The court held that it had inherent power in extraordinary circumstances to provide for the form and amount of the bond on appeal based on the conditions found to exist in a particular case.

The Tax Court has only such jurisdiction as is conferred upon it by statute. It has no broad "judicial power" given to article III courts (such as Federal District Courts). *Burns, Stix Friedman & Co.*, 57 T.C. 392, 396 (1971).

Although the instant case appears to present a hardship, we are confronted with a situation where we lack the broad inherent power

to grant relief to petitioners and we are at the same time also confronted with a specific statute covering the subject matter.

We, therefore, hold that we are unable to accept the collateral offered by petitioners in lieu of a surety for the bond to stay assessment and collection on appeal.

An order will be entered denying petitioners' motion and setting the bond in the amount of $1,926,981.80.