LOIS W. POINIER, AS TRANSFEREE OF HELEN WODELL HALBACH, ET AL., PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 23881-81, 23882-81, 23883-81.     Filed January 11, 1988.

*Geoffrey J. O'Connor*, for the petitioners.
*Leslie J. Spiegel*, for the respondent.

OPINION

TANNENWALD, *Judge:* On August 24, 1987, decisions were entered in these cases pursuant to our opinion filed on March 27, 1986. Subsequently, petitioners filed a timely motion to vacate decisions which was denied on November 3, 1987. Petitioners have moved for an order fixing the amount of an appeal bond pursuant to Rule 192[1] and section 7485.[2] Respondent requests us to fix the amount of the bond at $5,544,933. Petitioners do not dispute respondent's request as far as it goes, but claim that the amount of the bond should be reduced by $2,950,502 to reflect certain claims for income tax refunds previously filed by petitioners with respondent. In addition, petitioners seek to use "stripped" U.S. Government bonds as collateral in lieu of a surety bond and ask us to require respondent to accept,

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and, unless otherwise noted, all section references are to the Internal Revenue Code as amended.

[2] Sec. 7485 provides in relevant part:

Notwithstanding any provision of law imposing restrictions on the assessment and collection of deficiencies, the review under section 7483 shall not operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Tax Court unless a notice of appeal in respect of such portion is duly filed by the taxpayer, and then only if the taxpayer—

(1) on or before the time his notice of appeal is filed has filed with the Tax Court a bond in a sum fixed by the Tax Court not exceeding double the amount of the portion of the deficiency in respect of which the notice of appeal is filed, and with surety approved by the Tax Court, conditioned upon the payment of the deficiency as finally determined, together with any interest, additional amounts, or additions to the tax provided for by law, or

(2) has filed a jeopardy bond under the income or estate tax laws.

[Sec. 7485(a).]

in lieu of such bond, a trust arrangement for certain bonds and Treasury bills.

Section 7485 requires a bond "to protect the United States during the pendency of an appeal so that when the appeal becomes final, there will be adequate security for collection of the amounts finally determined to be owed." *Estate of Kahn v. Commissioner*, 60 T.C. 964, 967 (1973). Our customary practice is to set the appeal bond at the amount of the deficiency for which review is sought, plus additions to tax and interest running from the date the return was filed to a date 2½ years after the appeal is required to be filed, limited of course by the statutory cap of twice the deficiency. *Barnes Theater Ticket Service, Inc. v. Commissioner*, 50 T.C. 28, 29 (1968). Any departure from this customary practice "must provide a means whereby the Internal Revenue Service is certain that it can collect the approved deficiency." 50 T.C. at 29.

Reducing the amount of the bond because petitioners have claims for refund pending with respondent would not be in keeping with the requirement of certainty. While it may well be that petitioners' claims, which are based on a step-up in basis under section 1015 for gift taxes paid (which were required by our prior decisions, *Poinier, Transferee v. Commissioner*, 86 T.C. 478 (1986)), are meritorious, we cannot be certain that that is the case. The right to such refunds does not flow automatically from our prior decisions. Respondent would still be entitled to audit the returns for the years covered by the claims for refund in order to determine the correctness of the reported costs and sales proceeds of the securities whose basis would be stepped up,[3] whether there might be other items of omitted income for the years involved and whether the claimed deductions for those years are allowable. *Lewis v. Reynolds*, 284 U.S. 281 (1932).[4] Furthermore, respondent would appear to be entitled to offset against any refunds otherwise due petitioners, the amount of other taxes or other amounts owed by petitioners to the Government, the collection of

---

[3]The only evidence before us is the returns for the years involved showing such amounts, and the claims for refund showing the overall recalculation based upon the stepped-up basis.

[4]Neither party has suggested that the provisions of secs. 1311-1314 are in any way involved herein and their application would be open to question. See *O'Brien v. United States*, 766 F.2d 1038 (7th Cir. 1985); *Chertkof v. United States*, 676 F.2d 984 (4th Cir. 1982).

which is not barred by the statute of limitations. Sec. 6402. See 28 U.S.C. secs. 1346(c) and 1503; *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536 (1946); *Missouri Pacific Railroad v. United States,* 168 Ct. Cl. 86, 88-89, 338 F.2d 668, 670 (1964); *Luther v. United States,* 225 F.2d 495, 498 (10th Cir. 1954). Finally, there may be other grounds upon which respondent could challenge the validity of petitioners' refund claims. Under the foregoing circumstances, we hold that the amount for which an appeal bond is required in this case may not be reduced by the amount of the claimed refunds of income taxes.[5] We also conclude that, under all the circumstances herein, we should reject petitioners' request that we direct respondent to act upon such claims for refund in order to provide a basis for allowing such offsets.[6]

Petitioners also wish to deposit stripped U.S. bonds[7] in lieu of a surety bond. Deposit of U.S. bonds or notes in lieu of sureties is authorized by section 7485(c)(2), which refers to the provisions of 31 U.S.C. section 9303 (1982). In relevant part, that section provides:

(a) If a person is required under a law of the United States to give a surety bond, the person may give a Government obligation as security instead of a surety bond. The obligation shall—

(1) be given to the official having authority to approve the surety bond;

(2) be in an amount equal at par value to the amount of the required surety bond; and

(3) authorize the official receiving the obligation to collect or sell the obligation if the person defaults on a required condition.

[31 U.S.C. sec. 9303(a) (1982).]

The Secretary of the Treasury has issued regulations governing the deposit of U.S. Government bonds. Those

---

[5]We note that, if the claims for refund were offered as collateral in lieu of a surety bond, we would reach the same result for the same reasons and because the statute does not give us authority to accept anything other than U.S. Government obligations as collateral in lieu of a surety bond. See sec. 7485(c); *Estate of Kahn v. Commissioner,* 60 T.C. 964, 967-969 (1973). We also note that, although an established right to a refund is not a public-debt obligation of the United States (see 31 U.S.C. sec. 9303 (1982)), it would appear to satisfy the "surety" requirement of sec. 7485. Cf. *Adolph Coors Co. v. Commissioner,* 62 T.C. 300 (1974).

[6]Presumably, the possibility that his assertion of a gift tax deficiency would not be sustained accounts for respondent's failure thus far to take action on petitioners' claims for refund. Petitioners have indicated that their failure to institute suit on the claims for refund is based on the same reasoning.

[7]"Stripped bonds"' are bonds from which the interest coupons have been removed, leaving only the promise to pay the principal sum in the future, thereby allowing the interest coupons to be marketed separately from the principal.

regulations provide: "Coupon bonds or notes shall have attached thereto all coupons unmatured at the date of such deposit, and all matured coupons should be detached." 31 C.F.R. sec. 225.3 (1987).

We are satisfied that this regulation is a reasonable interpretation of the statute and that therefore stripped bonds may not be used as collateral in lieu of a surety bond. We are reinforced in this conclusion by the facts that the regulation has been in effect since 1935 (see 31 C.F.R. pt. 225 (1987)), and that Congress reenacted the statute governing the use of Government obligations in lieu of surety bonds in 1982 in substantially the same form as the statute that had been in effect when the regulation was promulgated. *Commissioner v. Estate of Noel,* 380 U.S. 678 (1965); *Joseph Gann, Inc. v. Commissioner,* 701 F.2d 3 (1st Cir. 1983), affg. a Memorandum Opinion of this Court; *Warner v. Commissioner,* 69 T.C. 995, 998 (1978). Compare Act of June 30, 1926, ch. 712, 44 Stat. 1, 85 (codified as amended at 6 U.S.C. sec. 15 (1976)), with Act of Sept. 13, 1982, Pub. L. 97-258, sec. 9303, 96 Stat. 877, 1046 (codified at 31 U.S.C. sec. 9303 (1982)).

We think that Congress allows U.S. Government obligations to be posted in lieu of a surety bond because the Government is able to cancel the entire obligation that it owes if the person posting the bond does not pay the debt he owes the Government.[8] Merely canceling the face amount of the bond, without also canceling future interest payments, does not serve Congress' goal. We recognize that the principal amount of the bond and the unmatured interest coupons could be separately discounted at the stated rate of the bond and only that portion of the value attributable to principal could be applied to the amount of the appeal bond.[9] This process would, however, increase the complexity of accepting U.S. Government bonds as collateral, both in making the calculations and in deciding on the proper dates on which to base the calculations (which is important because the value of the discounted principal payment

---

[8]The Government, of course, must bear any losses from changes in market interest rates from the stated rate of the bond.

[9]Except for accrued interest, the sum of these two values would equal the par value of the bond; the process is analogous to the process that the market uses in valuing the separate instruments when stripped bonds are created.

increases as the payment date nears). In this connection, if we required the deposit of additional bonds to make up for the discounted value of the stripped coupons, there would be a problem as to the disposition of bonds that remained after the application of bonds at face in the event that the deficiencies were not paid. Presumably, after such application, petitioners' liabilities would have been paid and any remaining bonds returned to them. Yet the Government would still be liable for the outstanding stripped coupons. Furthermore, we are unaware of any authority which would permit us to direct that the Government could, under such circumstances, retain the remaining bonds. Moreover, any attempt to make up the difference between the face value and the value of stripped bonds could run afoul of the limitation on the amount of a bond under section 7485. The foregoing complexities[10] support our conclusion that respondent's regulation is a reasonable interpretation of the statute.

As an alternative, petitioners ask that we require respondent to accept a trust arrangement of bonds (not clearly described) and Treasury bills. Obviously the use of non-U.S. Government obligations, e.g., corporate bonds, to fund the trust would not be acceptable. *Estate of Kahn v. Commissioner, supra.* The same would be true, in light of our prior reasoning, of stripped U.S. Government bonds. To the extent that acceptable U.S. Government obligations would be used, they could be deposited directly with this Court (see sec. 7485), and a trust arrangement would be unnecessary.

In summary, we will fix the amount of the bond at $5,544,933 without any reduction for the claims for refund pending with respondent, and we will not accept stripped bonds or a trust arrangement as collateral in lieu of surety.

---

[10]We note that the regulations, in respect of U.S. Government obligations issued at a discount, appear to avoid these complexities by providing in effect that the liability of the Government on the bonds, and therefore the amount to be applied in the event of default, is limited to the lesser of the amount due at maturity or the next date of redemption following deposit. See 31 C.F.R. sec. 225.3 (1982). Under this provision, the Government would not be liable for interest accruing after the use of the bonds in the event of default. We also note that, in the case of discount bonds, there is no separation of ownership as occurs in the case of stripped bonds.

*An appropriate order will be issued.*

Reviewed by the Court.

STERRETT, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, and WHALEN, *JJ.*, agree with this opinion.