**Michael G. O'BRIEN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 83–1234.

United States District Court, C.D. Illinois.

March 16, 1984.

**204**

David L. Higgs, Peoria, Ill., for plaintiff.

James K. Wilkens, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Janet Jannusch, Asst. U.S. Atty., Peoria, Ill., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

Both plaintiff and defendant have filed motions for summary judgment, and the entry of summary judgment is justified. Since all material facts are stipulated, or otherwise admitted, the only issues remaining relate to the legal consequences compelled by those facts. One party is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P.

## FACTS

Joseph G. O'Brien died on February 1, 1974. Prior to his death he had made gifts, individually, of shares of stock in a closely-held corporation to his children, including the plaintiff. He had also created three irrevocable trusts in favor of his three children, individually, giving further shares of the same stock to each trust. Upon Joseph's death, all of the stock was subject to recapture and inclusion in his estate as gifts made in contemplation of death. Internal Revenue Code § 2035.

A federal estate tax return was duly filed in the estate, which stated a value for all stock of the corporation of $215.7796

per share. Ultimately, the Internal Revenue Service disputed that evaluation and the issue of evaluation was submitted to the Tax Court for decision. The matter remained pending until April 9, 1980, when the Tax Court entered a stipulated order fixing the value at $280.10 per share.

In the meantime, in January 1975, the corporation was liquidated under an agreement for the sale of all corporate assets. Plaintiff reported his share of the liquidated proceeds as a capital gain on his income tax return filed for the calendar year 1975. He reported his basis in the stock at the $215.7796 basis stated in the estate tax return. He paid income tax for that year on the capital gain realized through his liquidation distribution over and above that cost-basis figure.

By virtue of the recapture provisions, plaintiff's stock was included as a part of the estate. The basis for determining value of the stock for estate tax purposes, and for determining the cost basis of the stock for the purpose of reporting capital gains, was the fair market value of the stock at the date of Joseph's death. The order of the Tax Court thus had the practical effect of not only fixing value for estate tax purposes but also fixing the cost value to plaintiff of his individually-owned stock.

After the Tax Court's order fixing the enhanced value at the date of death, plaintiff filed a claim for a refund on his income tax paid for the calendar year 1975. That claim was based on the differential between the $215.7796 claimed in 1975, as his cost basis, and the $280.10 figure which subsequently had been fixed by the Tax Court's order as the true market value of the stock in the estate. At about the same time when plaintiff filed his claim for refund, like claims were filed by the executor of Joseph's estate and by the Trustee on behalf of the three trusts, all of which rested upon the like adjustment in cost basis occasioned by the Tax Court order. All of those claims for refund were allowed, but plaintiff's claim was rejected as barred by the statutes of limitations contained in the Code. It is stipulated that,

absent the bar of limitations, plaintiff would have been entitled to the refund claimed. As a result of that differential in basis, he overpaid his 1975 income tax by the amount of $7,367.

## DISCUSSION

Plaintiff's motion for summary judgment rests upon two theories. He asserts that the Government is estopped by the judicially-pronounced doctrine of equitable recoupment to deny the refund which plaintiff claims. Secondly, he relies on the mitigation provisions of the Code, §§ 1311–1314, which were enacted and designed to sustain a claim for a refund in specifically-enumerated situations, notwithstanding the fact that the claim is barred by the statutes of limitation contained in the Code. The Government, by its motion and arguments, contests both theories.

This court concludes that plaintiff is entitled to summary judgment in his favor. The triggering event for evaluation of the stock for both income tax and estate tax purposes was the death of Joseph. The Government cannot dispute that conclusion. On the contrary, it admits that plaintiff's income taxes were overpaid to the tune of $7,367 because of the use of a share-cost basis, which the Internal Revenue Service later rejected, for the evaluation of the same shares for estate tax purposes. The Government cannot dispute the inconsistency of the positions which it took between 1975 and 1980, when the evaluation of the stock was substantially enhanced by the Tax Court order in the proceeding which it had initiated. On the contrary, its admission that the refund claimed by plaintiff would have been allowed except for the statute of limitations, stands as an admission that it did take inconsistent positions on the same subject matter which worked to plaintiff's detriment.

█ Plaintiff is entitled to judgment by application of the doctrine of equitable recoupment as established in *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In *Bull,* following a decedent's death, the estate reported the interest in earnings of a partnership, of which decedent had been a part, as $24,124.20, for estate tax purposes. The Commissioner increased that amount to $235,202.99 by including earnings for one year after the death, pursuant to a provision in the partnership agreement. Estate tax was paid upon the latter evaluation. The estate income tax return for 1920 did not report as income the earnings during that year upon which the estate tax had already been assessed. After a claimed deficiency in income tax was affirmed by the Board of Tax Appeals, the tax was paid. Suit was filed in the Court of Claims following the denial of a claim for refund. That court held that the amount was income, but it rejected the argument that the estate tax previously paid on the same sum must be credited against the income tax deficiency because a refund was barred by the statute of limitations. The Court reversed that decision. In pertinent context, it said that since the money was income, not capital, estate tax had been assessed by mistake without fraudulent intent, but that the unjust retention of the double payment would be immoral and would amount in law to a fraud perpetrated against the taxpayer. At 261, 55 S.Ct. at 700. The Court then applied the doctrine of equitable recoupment to the money erroneously paid in estate tax as a credit against the claimed deficiency in income taxes. At 263, 55 S.Ct. at 701.

Thus the Court recognized that equity does provide a remedy, notwithstanding the limitations statutes, for the taxpayer who is subjected to double taxation because the Government has taken inconsistent positions which do impinge upon the same funds or other property. Moreover, the Court indicated that fraud will be presumed in such circumstances without any showing of fraudulent intent.

*Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946), which the Government cites, is wholly inapposite to the situation presented here. In that case, the plaintiff, a battery manufacturer, had paid excise taxes on its products, without protest, for a number of

years. It then filed a claim for refund of excise taxes paid for the several years which were not then barred by limitations, and successfully supported its claim that the taxes were illegal by a suit against the Government. The Government paid the refund required by the judgment and assessed an income tax deficiency upon the refund in the year when it was paid. In litigation, which followed, the taxpayer invoked the doctrine of equitable recoupment, contending that excise taxes paid for prior years, which were time-barred, must be set off against the claimed income tax deficiency. The lower courts adopted that contention. The Supreme Court reversed, holding that the excise tax assessment for each year was a separate taxable event, saying, by implication at least, that a taxpayer who had slept on his rights for many years could not recoup a position which he had voluntarily abandoned. The Court distinguished *Bull* and *Stone v. White*, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), saying that there was no relationship between the income tax deficiency assessment and the time-barred excise taxes which the taxpayer had elected in those prior years to pay without protest. It said that the doctrine of equitable recoupment as pronounced in *Bull* was limited to situations in which the Government had taken inconsistent positions in the collection of two separate taxes which arose out of a single triggering event such as the death of a decedent. 329 U.S. at 299–302, 67 S.Ct. at 272–273. It is clear from the opinion that the Government had never changed its position with respect to the excise tax, and that the dispute was precipitated by the plaintiff's successful, but belated, challenge of the legality of that tax.

*Ford v. United States*, 276 F.2d 17, 149 Ct.Cl. 558 (1960), upon which the Government also relies, is likewise inapposite. A decedent's estate had included shares of stock which were inherited by his children. The evaluation of that stock, as reported for estate tax purposes, was adjusted upward from the value claimed in the estate tax return. When the children later sold the stock, they contended that their basis, which had been fixed by agreement between the estate and the Government, was too low. The Court of Claims agreed with their position that the fair market value of the stock at the date of decedent's death was greater than the figure accepted for estate tax purposes. It denied the claim of the Government for equitable recoupment for the underpayment of estate taxes, on the ground that the payment of estate taxes by the estate and the subsequent sale of the stock by the beneficiaries were separate taxable events.

The case before the court is indistinguishable from *Bull*. The date of death of Joseph O'Brien was the event which fixed the fair market value of this stock for all purposes. It fixed the value for estate tax assessment and also as the cost basis of the shares in the hands of plaintiff, his sisters, and the three trusts. When his 1975 income tax was filed, the Government had not contested the evaluation of the stock as stated in the estate tax return. For purposes of that income tax return, the Government accepted that stated basis as the value of the stock as it devolved into the hands of plaintiff at the death of his father. Later, and after the statute of limitations for a claim for refund by plaintiff had expired, on the claim and behest of the Government, that basis was substantially raised. Acceptance of the Government's position would leave this plaintiff in the presumptively fraudulent trap of the Government's intervening change of its own position. In this court's view, the stipulated facts present a situation which the doctrine announced in *Bull* was designed to correct. This plaintiff would be penalized simply because he could not anticipate that the Government would take, and ultimately sustain, an inconsistent position which could not possibly have been foreseen by him.

 It is the court's opinion that plaintiff can also rely upon the mitigation provisions contained in the Code.

The statute of limitations became an ostensible bar to plaintiff's claim after April

15, 1979. § 5601(a). The Tax Court decision, which had the effect of increasing plaintiff's tax basis, was rendered almost one full year after that date. Thus the limitations' period had expired before there existed any legitimate basis upon which plaintiff could assert a right to a refund for the overpayment of income tax for calendar 1975. The mitigation provisions were designed by Congress to correct the inequity inherent in the advent of double taxation which results from a substantial change of position after the statute of limitations would otherwise deny any legal remedy to the taxpayer.[1]

The decision in *Chertkof v. United States*, 676 F.2d 984 (4th Cir.1982), is accepted as stating a correct application of the mitigation provisions to a situation strikingly similar to this cause. That cause involved the interest of a decedent's estate and of a trust in certain securities which decedent had established prior to his death. In fiscal 1971, both the estate and the trust had sold and liquidated certain of the securities. Capital gains for both the estate and the trust were reported and income tax paid thereon, on the basis of the value stated for the securities in a previously-filed estate tax return. The Government later challenged the estate tax return evaluation. It prevailed upon its claim of enhanced value of the assets on November 1, 1974, after application of the limitations provisions would have barred any claim by either the estate or the trust for overpayment of income tax in fiscal 1971. When claims for refund by both the estate and trust for overpayment of income tax were denied, a suit was filed against the Government. A judgment in favor of the Government, for the reason that the claims were barred by the statute of limitations, was reversed. However, the court did remand the cause as to the claim of the trust for a determination as to whether the trust was the "taxpayer" with respect to whom the determination was made. With that exception, *Chertkof* is adopted as a well-reasoned interpretation of the convoluted language of the mitigation statutes, which this court will follow and apply to the resolution of the issues here involved.

■ The one remaining legal issue is the question whether plaintiff fits within the definition of "taxpayer" with respect to when the Tax Court determination was made, within the meaning of Section 1312(7) of the Code. This court is satisfied that plaintiff does fall within that definition.

The Government's assertion that the Tax Court proceeding involved only the question of estate tax evaluation, as opposed to an income tax evaluation, and that plaintiff thus was not a "taxpayer" with respect to whom the evaluation was made, cannot be sustained. Although it is true that the issue before the Tax Court was estate tax evaluation, only semantic gyrations, which this court is not inclined to adopt, could possibly lead to the conclusion that the Tax Court order did not also impact upon the evaluation of the same assets for income tax purposes. There was only one death. That event fixed the date for evaluation of assets included within the estate for purposes of all aspects of federal taxation. While it is true that plaintiff was not a party in the Tax Court, it must be recognized that he had full standing to intervene because the decision would affect the assets in his hands as well as all assets of the same character in the hands of the estate. Adoption of the Government's view would compel this court to the conclusion that Congress was indulging in some kind of charade when it enacted the mitigation provisions of the Code. The "taxpayer," with respect to whom a determination is made, is any taxpayer who is intimately related to the proceeding in which the determination was made and whose rights and interests are directly affected by that determination. That description fits plaintiff precisely.

The Government does seek comfort in language from several opinions which tend to support its views on the mitigation question, but such cases are seen to be inappo-

---

**1.** Those provisions are equally available to the Government in an appropriate situation.

site to the state of facts presented here. *E.g., Commissioner of Internal Revenue v. Goldstein's Estate,* 340 F.2d 24, 27 (2d Cir.1963); *Evans Trust v. United States,* 462 F.2d 521, 199 Ct.Cl. 98 (1972).

In *Goldstein,* the estate took the position that a right to receive commissions in subsequent years had no ascertainable value which could be established in the year 1950. In subsequent years, the taxpayer reported such receipts as capital gains. In a suit by the Commissioner related to taxes for 1953 and 1954, the Tax Court decision rejected the Commissioner's claim, but it did find that the asset had had a determinable value in 1950 of $70,000. The Commissioner, relying on the mitigation statutes, then changed his position and filed a suit for deficiency in taxes paid for 1950. The court affirmed a judgment for the taxpayer, holding that the Commissioner could not invoke the change of his own position after the previous Tax Court decision against a taxpayer who had maintained the same position throughout the controversy.

In *Evans,* although the court did say that there could be no reliance upon the mitigation statutes because the determination had been limited to an estate tax matter (462 F.2d at 524), the statement is inapposite to the issue before this court. The previous determination, upon which reliance was placed, did not relate to the evaluation of assets, but only to the question whether certain trust assets were properly included in the estate of a deceased beneficiary. 462 F.2d at 523.

*Olin Mathieson Chemical Corp. v. United States,* 265 F.2d 293, 296 (7th Cir. 1959), is also inapposite. The Government's quotation from that case, to the effect that the mitigation statutes do not have universal application, is a virtual hornbook reiteration that every suit which invokes those provisions must stand or fall on its own facts. In 1944, *Olin* had claimed an ordinary income loss which the Government rejected. After prolonged litigation, which extended past the limitations period, a determination was made that the loss was a capital loss, not an ordinary income loss. Following that determination, Olin filed a suit for a refund in taxes paid for 1945, claiming the right, notwithstanding the bar of limitations, to carry over the 1944 capital gains loss to offset capital gains realized in 1945. A judgment for Olin was affirmed.

Upon both asserted grounds, plaintiff is entitled to summary judgment.[2]

### ORDER

IT IS ORDERED, therefore, that the motion of the Government for summary judgment is DENIED; plaintiff's motion is ALLOWED; and judgment is entered for the plaintiff in the amount of $7,367.00, together with all accrued interest and his costs of suit.

---

**2.** Although the initial brief of the Government, filed simultaneously with plaintiff's main brief, treats the point, plaintiff does not address a potential claim that a letter written by plaintiff's counsel to a negotiator for the Government might be construed as an informal claim of entitlement to a refund. Thus, that letter has no bearing upon this decision.