**Michael G. O'BRIEN, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 84–1809.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1985.

Decided June 28, 1985.

Kenneth Greene, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

David L. Higgs, Sutkowski & Washkuhn Assoc., Peoria, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, ESCH-BACH, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Chief Judge.

This is an appeal from the judgment of the district court holding that the plaintiff taxpayer was entitled to a $7,367 (plus interest) refund of income taxes paid, notwithstanding the bar of the statute of limitations. Defendant United States argues that neither the mitigation provisions of the Internal Revenue Code of 1954, 26 U.S.C. §§ 1311–1314, nor the doctrine of equitable recoupment remove the limitations bar, 26 U.S.C. § 6511(a), to this refund suit. We agree, and for the reasons set forth below, reverse the district court's judgment.

I

The parties do not dispute the facts relevant to this action. Prior to his death on February 1, 1974, Joseph O'Brien, the sole shareholder of a closely held corporation (the "Corporation"), made gifts of shares of stock of the Corporation to his children, individually, including the plaintiff taxpayer Michael O'Brien. Joseph O'Brien also created three irrevocable trusts in favor of his three children, individually, and gave additional shares of the same stock to each trust. The transfers were made within two years of his death, so that all of the transferred stock was subject to recapture and inclusion in his estate as gifts made in contemplation of death. 26 U.S.C. § 2035.

The estate of Joseph O'Brien filed a federal estate tax return on approximately November 1, 1974, in which the stock of the Corporation was valued at $215.7796 per share. The Internal Revenue Service ("IRS" or "the Service") audited the estate and disputed this valuation, apparently

some time in late 1975, although the record is not clear on this point. The issue was submitted to the Tax Court for resolution. In January 1975, the Corporation was liquidated pursuant to an agreement for the sale of all corporate assets. For purposes of determining the resulting capital gain reportable on his 1975 calendar year federal income tax return, taxpayer used as his basis the $215.7796 per share value reported on the estate tax return. The IRS did not dispute this valuation and accepted payment of $7,367 in federal income tax on the gain arising from the liquidation. The estate tax controversy before the Tax Court remained pending throughout the liquidation process with the court ultimately entering a stipulated order on April 9, 1980, setting the value of the stock on the date of Joseph O'Brien's death at $280.10 per share.

In light of the result in the Tax Court, taxpayer filed a refund claim with the IRS alleging overpayment of his 1975 income taxes. The Service denied the claim on the basis that the statute of limitations[1] had run for the 1975 tax year on April 8, 1981, when the claim was filed, because "more than three years had passed since the filing of the Return, as well as more than two years after the payment of the tax for which the refund was sought." Stipulation of Facts, par. 18. O'Brien then filed this refund suit in the District Court for the Central District of Illinois, arguing that his refund claim was saved from the limitations bar by the mitigation provisions of the Internal Revenue Code and by operation of the doctrine of equitable recoupment. The district court agreed with the taxpayer on both points and entered summary judgment for the plaintiff in the

1. The statute of limitations is contained in 26 U.S.C. § 6511 which provides in pertinent part:
 SEC. 6511. LIMITATIONS ON CREDIT OR REFUND.
 (a) *Period of Limitation on Filing Claim.—* Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2

years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

amount of $7,367 along with interest and costs. *O'Brien v. United States,* 582 F.Supp. 203 (C.D.Ill.1984). The United States appeals.

## II

The sole issue in this case is whether the mitigation provisions or the doctrine of equitable recoupment remove the statute of limitations bar to plaintiff's claim.[2] The United States concedes that recovery is proper should the statute of limitations not apply to O'Brien's claim.[3] *O'Brien,* 582 F.Supp. at 204–205 (Stipulation of Facts, par. 18). We turn first to the mitigation provisions.

## A. MITIGATION PROVISIONS

In certain circumstances involving inconsistent tax treatment the mitigation provisions of the Internal Revenue Code, 26 U.S.C. §§ 1311–1314 (reproduced in the Appendix, *infra* ), allow both the government and the taxpayer to correct an error made in a prior closed tax year and to obtain an adjustment to tax liability despite the running of the ordinary period of limitations. They "represent an effort to meet in part the difficulties encountered in attempting to determine correctly the year in which such claims as depletion, depreciation and other expense deductions, as well as items of income should be reported." 2 J. MERTENS, THE LAW OF FEDERAL INCOME TAXATION § 14.01, p. 2 (rev. ed. 1984). In *Olin Mathieson Chemical Corp. v. United States,* 265 F.2d 293, 296 (7th Cir.1959), this Court noted with respect to the provisions that "Congress did not intend to provide relief in all situations in which just claims are precluded by statutes of limitations" and recognized the need for limitations statutes despite the harsh results they sometimes cause to taxpayers and the government alike. While the "complicated and technical," *Olin,* 265 F.2d at 296, (and we might add convoluted) language of §§ 1311 to 1314[4] appears at odds with

**2.** After circulation and approval of this opinion, but prior to its release, an excellent article specifically grappling with the mitigation provisions and the doctrine of equitable recoupment appeared in the *Tax Lawyer.* See Willis, *Some Limits of Equitable Recoupment, Tax Mitigation, and Res Judicata: Reflections Prompted by Chertkof v. United States,* 38 TAX LAWYER 625 (1985). Although the piece articulately discusses several of the difficult issues considered herein, since it does not contravene any of the positions taken by this Court we limit our references to the article. We do note its severe criticism of the district court's opinion in this case. See *id.* at 642.

**3.** The government suggests that the taxpayer could have avoided his predicament by filing either a protective refund claim or a request for an extension of the statute of limitations for refund claims (Br. note 5 and oral argument). The Fourth Circuit in *Chertkof v. United States,* 676 F.2d 984 (1982), indicated that to expect a taxpayer to file a protective claim involving "unnecessary and obtrusive paperwork," *id.* at 991, would unreasonably require the taxpayer to be "hypercautious." *Id.* But the government's suggestion regarding the request for an extension of the limitations period would not appear to place an onerous burden on the taxpayer. Apparently such an extension can be obtained by requesting and completing an internal IRS document, a "Form 872," available from the IRS agent involved in the relevant deficiency proceeding. The existence of pending litigation which would affect the taxpayer's refund claim of itself would justify the extension of the refund suit limitations period. Counsel for the United States assured us at oral argument that the extension would be routinely granted in cases such as the present one. The authority for the extension derives from 26 U.S.C. § 6511(c), which allows an extension of the period for filing a refund claim to six months after the time of expiration of an agreement, executed pursuant to 26 U.S.C. § 6501(c)(4), to extend the limitations period for assessment of a tax.

Additionally, it has been held that a general notice advising the government that the taxpayer believes his taxes have been erroneously assessed, requesting a refund and indicating that the basis of the refund claim is in litigation, is sufficient to constitute an "informal" refund claim which may be perfected by the filing of a formal refund claim after the refund claim limitations period has expired. See *United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132; *Stuart v. United States,* 130 F.Supp. 386, 388–390. 131 Ct.Cl. 174 (1955); *Night Hawk Leasing Co. v. United States,* 18 F.Supp. 938, 941–942 (Ct.Cl.1937).

**4.** The mitigation provisions were originally enacted as Section 820 of the Revenue Act of 1938, ch. 289, 52 Stat. 447, and were continued as Section 3801 of the Internal Revenue Code of 1939.

those provisions' intended purpose—to "provid[e] for mitigation of some of the inequities under the Income Tax Laws caused by the Statute of Limitations and other provisions which now prevent equitable adjustment of various income hardships," H.R.REP. No. 2330, 75th Cong., 3d Sess. 56 (1938)—we are obligated to recognize that the Sections "have the clear purpose of providing for adjustments to correct errors only under particular circumstances set forth in detail." *Olin*, 265 F.2d at 296.

 The party invoking these Sections, here the taxpayer, carries the burden of proving that the specific requirements of the provisions are met. *Id.* In view of the provisions' equitable purpose, however, it is important that the mitigation provisions be given a liberal and remedial interpretation. See *id.* at 297; *Chertkof v. United States,* 676 F.2d 984, 990 (4th Cir.1982); *Gooding v. United States,* 326 F.2d 988, 993, 993 n. 9, 164 Ct.Cl. 197 (1964), certiorari denied, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42. See generally Note, *Sections 1311–15 of the Internal Revenue Code: Some Problems in Administration,* 72 HARV.L.REV. 1536, 1543–1549 (1959) (describing the conflict between cases allowing a liberal construction of the provisions and those rendering a strict construction).

A party qualifies for relief under the mitigation provisions if three requirements are met:

1) there is a "determination" as defined by Section 1313(a);

2) the "determination" falls within the specified "circumstances of adjustment" set forth in Section 1312; and

3) the party against whom the mitigation provisions are being invoked has maintained a position inconsistent with the challenged erroneous inclusion, exclusion, recognition or nonrecognition of income.

26 U.S.C. § 1311.

With respect to the second requirement listed above, it also must be demonstrated that the taxpayer falls within one of the seven express categories or "circumstances of adjustment" listed in Section 1312. Taxpayer O'Brien solely alleges that his circumstances are covered by § 1312(7) (entitled "Basis of property after erroneous treatment of prior transaction"). Section 1312(7), dealing with basis problems, has been described as entailing "by far the most difficult cases covered by [the mitigation provisions]." Maguire & Surrey, *Section 820 of the Revenue Act of 1938,* 48 YALE L.J. 509, 761 (1939). Indeed, in order to invoke § 1312(7) the asserting party must prove existence of the following four additional conditions:

1) the relevant "determination" (see requirement #1 above and § 1313(a)) "determines the basis of property";

2) there exists a "transaction on which such basis depends" or a "transaction which was erroneously treated as affecting such basis";

3) "in respect of" the "transaction * * there occurred" a described error (listed in § 1312(7)(C)) which includes, for example, erroneous recognition and nonrecognition of gain or loss and erroneous inclusion or exclusion of gross income; and

4) the described error occurred "with respect to a [described] taxpayer" (listed in § 1312(7)(B)).

26 U.S.C. § 1312(7)(A).

 After close scrutiny of taxpayer's predicament in relation to the numerous statutory requirements regarding basis problems, we are forced to conclude that taxpayer's situation is not covered by the mitigation provisions. Specifically, assuming satisfaction of all other prerequisites, the taxpayer, in statutory terms, fails to meet the third and fourth requirements of § 1312(7)(A) (Appendix, *infra*) that the described error occur "in respect of" the "transaction on which * * * basis depends" and that the described error occur "with respect to a [described] taxpayer."

**1. The Third Requirement of § 1312(7)(A)**

As noted above, the third requirement of § 1312(7)(A) (as we have attempted to

break down the statutory language) requires that "in respect of any transaction on which such basis depends * * * there occurred * * * any of the errors described in subparagraph (C) of this paragraph." Plaintiff taxpayer facilitates our task of analysis by delineating precisely how his circumstances meet or fall within the technical requirements of § 1312(7)(A). He classifies "the transfer of stock by Joseph [O'Brien] to the [plaintiff] Taxpayer and the subsequent death of Joseph within two years thereafter" (Br. 21) as the "transaction on which such basis depends."[5] The position that a transfer resulting from death is a "transaction" within the meaning of the statute receives some support in relevant caselaw. See *Chertkof*, 676 F.2d at 992. O'Brien further delineates the "erro[r] described in subparagraph (C)" as an "erroneous recognition of gain" (§ 1312(7)(C)(ii)), specifically, the "overpay[ment] of income tax with respect to 1975" resulting from the excessive gain reported by the taxpayer which was caused in turn by utilization of an erroneously low basis (Br. 22). Thus the 1975 gain on liquidation is listed by the taxpayer as the described error.[6]

The district court did not consider the requirement, as we read the statute, that the described error occur *"in respect of"* (emphasis added) the basis-determining transaction. Plaintiff appears at one point to read the phrase "in respect of" out of the statute (Br. 18). Applying the language to the facts of this case, it is evident that the taxpayer does not satisfy the third requirement of § 1312(7)(A). It cannot be said that in respect of the transfer of stock by the taxpayer's father and his subsequent death, there occurred the admittedly excessive and erroneous recognition of gain

by the taxpayer on the 1975 liquidation of the Corporation. The erroneous recognition of gain here occurred "in respect of" the 1975 liquidation transaction and did not occur "in respect of" the Joseph O'Brien transfer and subsequent death. The estate in 1974 erroneously paid too little estate tax in respect of the death of Joseph O'Brien, but even if this is viewed as occurring "with respect to" the taxpayer Michael O'Brien, the underpayment of estate tax is not an error described in § 1312(7)(C).

Taxpayer apparently deals with the "in respect of" language by arguing that the "determination of basis [allegedly the Tax Court order of April 9, 1980, valuing the shares at $280 instead of $215, Br. 22] directly resulted in" the taxpayer's overpayment of tax in 1975 on the gain on liquidation (*id.*). Such an argument does not help O'Brien. First, the statute nowhere recognizes that the ultimate determination of basis directly result in or be "in respect of" the described error. Second, to the extent taxpayer would have us require only that the basis-determining transaction directly result or perhaps ultimately result in a described error, his construction must be rejected as deviating too far from the language of the statute.

If Congress had intended that the error concerning the taxpayer only be a direct or indirect result of the transaction where basis was first set, it could have used such words or could have used language indicating that a causal connection between the ultimate error in tax liability and the basis-determining transaction was all that was necessary to invoke the statute, *e.g.*, "because of a transaction on which basis depends, there occurred a described error." It did not, however, and it would be going

---

**5.** A "transaction on which * * * basis depends" (more simply a "basis-determining transaction") must be distinguished from a transaction which merely depends on basis. The former specifically refers to "the transaction in which the property was acquired, and the basis of the property at the time of disposition can be said to depend on [or is determined by] such transaction." *United States v. Rushlight*, 291 F.2d 508, 517 (9th Cir.1961). In contrast a transaction which depends on basis is a transaction

which requires the utilization of or reference to the basis of property to determine the tax consequences of the transaction. See *Chertkof*, 676 F.2d at 992–993.

**6.** We can conceive of no characterization of plaintiff's circumstances, in terms of applying statutory language to his situation, more favorable to the taxpayer than his own.

beyond the situations specifically described in the statute, contrary to *Olin,* to replace the existing language of " 'in respect of' [*i.e.,* with regard to, or concerning] an X-type transaction 'there occurred' a described error," with "there is an X-type transaction which ultimately caused or directly resulted in a described error."

In the ordinary situation concerning basis problems contemplated by Congress, the asserting party under the mitigation statute has no difficulty demonstrating ·that the described error occurred in respect of the basis-determining transaction. The example dealing with basis problems set forth in the Senate Finance Committee's Report concerning the mitigation provisions illustrates this point:

C. In 1931 the taxpayer received securities of corporation A having a fair market value of $5,000 in exchange for securities of corporation B which cost him $12,000. The taxpayer treated the exchange as one in which gain or loss was not recognizable and upon audit the return was accepted as filed. He sold the A securities in 1937 for $15,000 and reported $3,000 gain. After the statute of limitations had run on refund claims for 1931, the Commissioner asserted a deficiency for 1937 on the ground that the loss realized on the exchange in 1931 was erroneously treated as nonrecognizable, and that the basis for gain or loss upon the sale was $5,000 resulting in a gain of $10,000. The taxpayer and the Commissioner then entered into a closing agreement for 1937 in which the taxpayer agreed to the Commissioner's determination. To prevent the inconsistent resort to the lower basis resulting in complete denial of a deduction for the loss sustained in 1931, an adjustment would be made under the proposed section.

S.REP. No. 1567, 75th Cong., 3d Sess. 49 (1938). In the above example it is clear that the described error (nonrecognition of loss) occurred in respect of the 1931 transaction on which basis (of the stock) depends.

The Tax Court considered this precise issue in *American Foundation Co. v. Commissioner,* 2 T.C. 502 (1943), and gave the phrase "in respect of any transaction upon which such basis depends" the same interpretation as does this Court. In *American Foundation,* the taxpayer sold its mining company in 1931 to a corporation and received 15,000 shares of the corporation's stock having a fair market value of $20 per share and an adjusted basis below that fair market value. The taxpayer did not recognize any gain with respect to the stock, but the Internal Revenue Service assessed a deficiency. According to the Service's view the basis of the stock after recognition of gain would be its fair market value. The deficiency was paid and the taxpayer brought a refund suit, arguing that no gain should have been recognized in 1931. While this action was pending, the taxpayer sold some of the shares in 1934, 1936, and 1937, realizing a gain which was computed by using the fair market value of the shares as basis rather than the lower adjusted basis. Thereafter, when a reopening of the transactions in 1934, 1936 and 1937 was time-barred, the district court, in a final determination, sustained the taxpayer's position that no gain should have been recognized with regard to the stock received in the 1931 transaction. The Service, pursuant to the mitigation provisions, assessed a deficiency for the later years when the stock sales occurred, on the ground that adjusted basis rather than fair market value should have been utilized to determine gain. The Tax Court held against the Commissioner, ruling that the described error, the omissions from gross income in 1934, 1936 and 1937, were not " 'in respect of any transaction upon which such basis depends.' " *Id.* at 508. The court explained that the basis depended upon the 1931 transaction whereas the omissions were in respect of the sale of shares of the stock in the later 1934, 1936 and 1937 transactions. *Id.* Just as in the present case, the basis-determining transaction resulted in a later described error (erroneous nonrecognition of gain), but the court correctly determined that this rela-

tionship simply did not meet the statutory requirement (there to the government's detriment).

In *Gooding, supra,* the Court of Claims distinguished *American Foundation* on the ground that the taxpayer in *Gooding* sought an adjustment for a described error (erroneous recognition of gain) in 1946 where the gain was erroneously recognized in the very 1946 transaction which determined basis. 326 F.2d at 992–993. Our research has revealed no other cases in point.

The government is correct in asserting that *Chertkof v. United States,* a case similar to the present one and on which plaintiff relies heavily, never addressed the "in respect of" language of § 1312(7)(A). *Chertkof* involved stock held by a trust created by decedent David Chertkof (and transferred prior to death) and also held by decedent Annie Chertkof's estate. Estate tax returns were filed for both the Annie and David Chertkof estates, which asserted values for the relevant securities. The government did not accept the estate tax valuations and filed notices of deficiency to the estates in November of 1972 and 1973. Prior to the deficiency notices, however, certain sales and liquidating distributions occurred in 1971 with respect to stock in the David Chertkof trust and the Annie Chertkof estate, with the trustees and executors naturally using the values contained in the estate tax returns to determine the basis of stock and resulting gains on the transactions. The dispute over the estate tax valuations ultimately was settled by the Tax Court in November of 1974 with the court entering orders placing a higher value on the securities in question than that claimed originally by the estates. It was apparent that the taxpayer trust and estate had used too low a basis with respect to the 1971 transactions and consequently erroneously had recognized too much gain and paid too large a tax. The taxpayers' attempts to secure refunds were refused because the refund claims were no longer timely. The Fourth Circuit reversed the district court's ruling that the mitigation provisions were inapplicable to the case and granted relief to the Annie Chertkof estate and remanded as to the David Chertkof trust, with instructions to consider whether it had met the fourth requirement of § 1312(7)(A) (whether the described error had occurred with respect to a described taxpayer).

For the taxpayers in *Chertkof* to satisfy the third requirement of § 1312(7)(A), it would appear that in respect of the basis-determining transaction (the transfer resulting from the deaths of David and Annie Chertkof, 676 F.2d at 992), there would have had to have occurred the described error (erroneous recognition of gain in 1971, *id.* at 993 n. 19). Yet as in the present case, it is clear that the described error occurred with respect to the subsequent transfers of stock by the taxpayer in 1971 rather than with respect to the basis-determining transaction, namely transfers upon death. Although we do not see how either the taxpayer trust or estate could have satisfied the third requirement of § 1312(7)(A), it is not clear whether the government raised the issue before either the appellate or district court. See *Chertkof v. United States,* 81–1 U.S.T.C. ¶ 9326 (D.Md.1981).

The disposition of the case in the district court may have caused the *Chertkof* reviewing court to overlook the "in respect of" language. The taxpayers in *Chertkof* originally had argued below that the liquidating distributions and sales of stock were the basis-determining transactions. If this were so, the third requirement of § 1312(7)(A) would be satisfied since the described error occurred in respect of the stock sales. The district court, however, correctly noted that the stock sales were merely transactions which depended on basis, see *supra* note 5, but were not the necessary transactions on which basis depends. 81–1 U.S.T.C. at 86,855. The district court then considered whether the transfers at death might be transactions on which basis depends, but rejected that notion on the ground that death was not a "transaction." *Id.* at 86,856. The Fourth Circuit disagreed with the lower court on

this point, finding that the transfers on death were "transactions" within the meaning of the statute. The *Chertkof* reviewing court, however, never grappled with the problem that if the transfers on death were indeed the basis-determining transactions, the described error of erroneous recognition of gain simply did not occur in respect of those transfers.

In footnote 19 of *Chertkof,* the court of appeals held that consistent with the "Prior erroneous treatment" heading of § 1312(7)(C), there was an erroneous recognition of gain in 1971 prior to the November 1974 § 1313(a) "determination." Such a holding, however, does not solve the problem of whether the erroneous recognition of gain occurred in respect of the basis-determining transaction.

In sum, since plaintiff has not satisfied the third requirement of § 1312(7)(A), he may not invoke the mitigation provisions.

## 2. The Fourth Requirement of § 1312(7)(A)

Nor can this Court accept that the taxpayer has met the fourth requirement of § 1312(7)(A)—that the described error (erroneous recognition of gain) occur "with respect to a taxpayer described in subparagraph (B)." Since taxpayer only claims that he is described by § 1312(7)(B)(i),[7] he must be "the taxpayer with respect to whom the determination is made." The plaintiff characterizes the April 9, 1980 Tax Court order as the relevant determination of basis (Br. 11, 18). Although Michael O'Brien was not a party to the relevant Tax Court proceeding determining the value of the stock for estate tax purposes, he never-

theless argues, and the district court agreed, that he is "the taxpayer with respect to whom the determination is made." The lower court, without citing any authority, ruled that "[t]he 'taxpayer' with respect to whom a determination is made, is any taxpayer who is intimately related to the proceeding in which the determination was made and whose rights and interests are directly affected by that determination." 582 F.Supp. at 207. Since the taxpayer, in the court's view, "had full standing to intervene [in the Tax Court proceeding] because the decision would affect the assets in his hands," *id.,*[8] he was found to meet the above standard.

The government argues, however, that a taxpayer must be a party to the relevant determination in order to be considered the taxpayer with respect to whom the determination is made. This position receives support in the Treasury regulations interpreting § 1312(7). See Treas.Reg. § 1.1312(7)(c), T.D. 6617, 1962–2 C.B. 196. Interpretations of the Internal Revenue Code rendered by the Secretary of the Treasury pursuant to authorized regulations, as are these (26 U.S.C. § 7805(a)), are entitled to substantial deference by this Court as contemporaneous constructions of a statute by those charged with its administration. *United States v. Correll,* 389 U.S. 299, 306–307, 88 S.Ct. 445, 449–450, 19 L.Ed.2d 537. As the Supreme Court in *Correll* explained:

> [W]e do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task

---

**7.** Michael claims only that he is "the taxpayer with respect to whom the determination is made." § 1312(7)(B)(i). He correctly does not argue that he meets the description of a taxpayer set forth in § 1312(7)(B)(ii) or (iii). While he did "acquire title to the property [stock] in the transaction" (on which basis depends), § 1312(7)(B)(ii), he was not the person "from whom, mediately or immediately, the taxpayer with respect to whom the determination is made *derived* title." § 1312(7)(B)(ii), (iii) (emphasis added). No taxpayer with respect to whom a relevant determination was made derived title from Michael O'Brien. Nor did plain-

tiff receive title from the taxpayer with respect to whom a determination was made (the estate of Joseph O'Brien), but from the trust and from Joseph O'Brien individually. Even assuming Michael O'Brien is also the taxpayer with respect to whom the determination was made, he would have needed to derive title from himself to fit within the language of § 1312(7)(B)(ii) or (iii).

**8.** The government contests whether Michael O'Brien could have intervened in the Tax Court proceeding (January 15, 1985, oral argument).

of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, "it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments." *Commissioner v. Stidger*, 386 U.S. 287, 296, 87 S.Ct. 1065, 1071, 18 L.Ed.2d 53. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner. 389 U.S. at 306–307, 88 S.Ct. at 449–450.

The regulations, through the provision of illustrative examples, indicate that a person who is not a party to the relevant determination is not the taxpayer with respect to whom the determination is made, even if the determination conclusively determines the appropriate tax treatment of a transaction in which a person was involved and demonstrates that a described error occurred regarding the person. Treas.Reg. § 1.1312(7)(c), examples (1)(i), (3).[9] In both above-cited examples, the government could not invoke the mitigation provisions against the taxpayer A, who was not a party to the relevant determination, even though the determination considered a transaction involving A and clearly demonstrated that A had erroneously failed to recognize gain. The inapplicability of the mitigation provisions in both examples turned on the fact that taxpayer A did not fall within any of the three classes of taxpayers described in § 1312(7)(B) (including (7)(B)(i)). The district court's standard appears to conflict with the position taken by the Secretary since in both examples the rights and interests of A were directly affected by the determination.

Analysis of the three classes of taxpayers set forth in § 1312(7)(B) supports the Secretary's and the defendant's reading of the § 1312(7)(B) phrase "taxpayer with respect to whom the determination is made." The broad reading given § 1312(7)(B)(i) by the district court is inconsistent with the specific language used in §§ 1312(7)(B)(ii) and (iii) and would seemingly render the latter two Sections superfluous. Sections 1312(7)(B)(ii) and (iii) set forth two situations where the described taxpayer is "the taxpayer with respect to whom erroneous treatment occurred," but is not a party to the relevant determination. In these Sections the described taxpayer is a person "from whom, mediately or immediately, the taxpayer with respect to whom the determination is made *derived* title" (emphasis supplied). There is no description in § 1312(7)(B) of a taxpayer who *receives* title from "the taxpayer with respect to whom the determination is made." This latter situation, however, would more closely describe Michael O'Brien's circumstances although he did not technically receive title from the estate, which was a party to

9. The examples provide in full:

Example (1). In 1949 taxpayer A transferred property which had cost him $5,000 to the X Corporation in exchange for an original issue of shares of its stock having a fair market value of $10,000. In his return for 1949 taxpayer A treated the exchange as one in which the gain or loss was not recognizable:

(i) In 1955 the X Corporation maintains that the gain should have been recognized in the exchange in 1949 and therefore the property it received had a $10,000 basis for depreciation. Its position is adopted in a closing agreement. No adjustment is authorized with respect to the tax of the X Corporation for 1949, as none of the three types of errors specified in paragraph (a) of this section occurred with respect to the X Corporation in the treatment of the exchange in 1949. More-

over, no adjustment is authorized with respect to taxpayer A, as he is not within any of the three classes of taxpayers described in paragraph (b) of this section.

\* \* \* \* \* \*

Example (3). In 1950 taxpayer A sold property acquired at a cost of $5,000 to taxpayer B for $10,000. In his return taxpayer A failed to include the profit on such sale. In 1953 taxpayer B sold the property for $12,000, and in his return for 1953 reported a gain of $2,000 upon the sale, which is confirmed by a closing agreement executed in 1955. No adjustment is authorized with respect to the tax of taxpayer A for 1950, as he does not come within any of the three classes of taxpayers described in paragraph (b) of this section. Treas.Reg. 1.1312–7(c).

the 1980 Tax Court decision, but from Joseph O'Brien and the trust.[10]

If § 1312(7)(B) were to be read as plaintiff urges (the taxpayer with respect to whom the determination is made "is any taxpayer directly affected by the determination" (Br. 23)), §§ 1312(7)(B)(ii) and (iii) would appear superfluous since the later determination of basis involving a person who acquired title from the taxpayer against or for whom the mitigation provisions are applied, would "directly affect" that prior taxpayer and indeed would determine the proper tax treatment of a transaction involving that prior taxpayer for or against whom the mitigation provisions are invoked. See Treas.Reg. § 1.1312(7)(c), examples 2(i), (ii). The implication of the language of §§ 1312(7)(B)(ii) and (iii), which treat separately a taxpayer for or against whom the provisions are invoked and the "taxpayer with respect to whom the determination is made," is that a taxpayer who is not a party to a determination which nevertheless directly affects that taxpayer is not under the statute the taxpayer with respect to whom the determination is made. Consequently, we must conclude that Michael O'Brien, though admittedly directly affected by the 1980 Tax Court determination, is not "the taxpayer with respect to whom the determination is made" and does

not meet the fourth requirement of § 1312(7)(A).[11]

In conclusion, we hold that the fourth requirement of § 1312(7)(A) also has not been satisfied and that plaintiff may not, therefore, avail himself of the mitigation provisions.[12] Since the *Chertkof* case did not discuss the third requirement of § 1312(7)(A) and remanded with regard to the fourth requirement, *supra* p. 13, our decision is not in conflict therewith.

## B. EQUITABLE RECOUPMENT

■ Having reviewed the requirements for application of the doctrine of equitable recoupment, it is clear that the doctrine does not lift the limitations bar to taxpayer's refund suit. The doctrine of equitable recoupment is available to both the taxpayer and the government, depending on the circumstances, where inequitable consequences have resulted from application of the statute of limitations. See, *e.g.*, *Stone v. White*, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421. It is "in the nature of a defense arising out of some feature of the transaction upon which plaintiff's action is grounded." *Bull*, 295 U.S. at 262, 55 S.Ct. at 700 (quoted with approval in *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296,

10. Moreover, Section 1313(c) (See Appendix, *infra*) defines the term "related taxpayer," as it is used in the mitigation provisions, §§ 1312(1) through (6), by listing seven relationships, including "(4) fiduciary and beneficiary, legatee, or heir," and "(5) decedent and decedent's estate." It is significant that the term "related taxpayer" does not appear in § 1312(7), and Treas.Reg. § 1.1313(c)–1, T.D. 6617, 1962–2 C.B. 196, expressly states that the concept of a related taxpayer has no application with respect to the circumstances of adjustment listed in § 1312(7). This exclusion tends to show that a taxpayer, who is not a party to the relevant determination, though a related party such as Michael O'Brien, is not the taxpayer with respect to whom the determination is made under § 1312(7)(B)(i).

11. The taxpayer relies on *Gooding v. United States, supra,* and *Joyce v. United States,* 237 F.Supp. 163 (M.D.Pa.1964), reversed on other grounds, 361 F.2d 602 (3d Cir.1966), to support its broad interpretation of § 1312(7)(B)(i). Nei-

ther case is in point. In *Gooding* the Court of Claims considered whether a Tax Court decision was a determination of basis and did not deal with the issue of whether plaintiffs Mr. and Mrs. Gooding were described taxpayers under the mitigation provisions. 326 F.2d at 991–992. In *Joyce* the court recognized that the deceased taxpayer came within the language of § 1312(7)(B)(i) precisely because the taxpayer was a party to the relevant Tax Court determination. 237 F.Supp. at 168.

12. In view of our holding in favor of the government as to the third and fourth requirements of § 1312(7)(A), we do not address its additional arguments that 1) under § 1313(a) a determination must relate to an income tax as opposed to an estate tax deficiency, 2) the Tax Court order establishing the value of the stock at the time of Joseph O'Brien's death was not an income tax determination, 3) the Tax Court order did not determine the basis of property, and 4) the Commissioner has not maintained an inconsistent position.

299, 67 S.Ct. 271, 272, 91 L.Ed. 296). Thus a prerequisite to application of the doctrine is that "the offsetting amount from the year barred by the statute of limitations must result from the same transaction which gave rise to the refund or deficiency in the open year." 10 J. MERTENS, *supra* at § 60.05, p. 16 (rev. ed. 1984). It may be employed only where "a single transaction constitute[s] the taxable event claimed upon and the one considered in recoupment." *Rothensies*, 329 U.S. at 299, 67 S.Ct. at 272. Recoupment, consequently, will permit the government to recoup a correctly assessed tax, which ordinarily could not be collected because of a statute of limitations bar, against a timely refund of a tax erroneously collected and conversely will permit a taxpayer to recoup an erroneously paid tax, the refund of which is time-barred, against a timely and correctly asserted deficiency by the government. The doctrine thus operates only to reduce a taxpayer's timely claim for a refund or to reduce the government's timely claim of deficiency; it does not allow the collection of the barred tax itself. See generally 10 J. MERTENS, *supra* at § 58.42, p. 138, § 60.05, pp. 16–18 (rev. ed. 1984). In summary, the doctrine requires some validly asserted deficiency or refund against which the asserting party desires to recoup a time-barred refund or deficiency.

In view of the nature and underlying theory of equitable recoupment, it is clear that the doctrine cannot be used "as an independent ground for reopening years now closed by the statute of limitations," *Evans Trust v. United States*, 462 F.2d 521, 526, 199 Ct.Cl. 98 (1972), and requires the timeliness of the underlying action against which a party seeks to employ recoupment. As the Supreme Court explained in *Bull*, invocation of the doctrine "is never barred by the statute of limitations *so long as the main action itself is*

timely.". 295 U.S. at 262, 55 S.Ct. at 700 (emphasis added).

■ Attempts by taxpayers to utilize the doctrine to revive an untimely affirmative refund claim, as opposed to offset a timely government claim of deficiency with a barred claim of the taxpayer, have been uniformly rejected. See *Ellard v. United States*, 48 A.F.T.R.2d ¶ 81–5201, pp. 81–5784—5785 (Ct.Cl.1981); *Brigham v. United States*, 470 F.2d 571, 577, 578 (Ct.Cl. 1972), certiorari denied, 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65; *Evans*, 462 F.2d at 526. See also *United States v. Gulf Oil Corp.*, 485 F.2d 331, 333 (3d Cir.1973) (time-barred action brought affirmatively by government to recover erroneously paid refund not revived by equitable recoupment). Plaintiff has invoked the doctrine in this precise manner and therefore the district court's holding that equitable recoupment permits the taxpayer's time-barred refund claim must be reversed. O'Brien's untimely refund suit in 1983 asserts recoupment affirmatively to recover an erroneously paid tax and does not seek to offset the amount of a properly asserted and timely deficiency.[13] This Court sees no grounds for extending the doctrine and plaintiff offers none. The following language from *Brigham* accurately describes the present situation:

the plaintiff[ ] * * * misapprehend[s] the historical function of the recoupment remedy in the tax law. When its benefits are sought by the taxpayer, the function of the doctrine is to allow the taxpayer to *reduce* the amount of a deficiency recoverable by the Government by the amount of an otherwise barred overpayment of the taxpayer. In *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), an executor's suit was founded on a timely claim for refund, paid pursuant to the Government's asserted deficiency, on the theory that the tax should be reduced by an earlier

---

13. A recoupment claim need not be made during an action by the government for payment of a deficiency. It is proper for the taxpayer to pay the entire amount of the properly owed tax and later make a timely refund claim with re-

gard to the properly owed tax raising the defense of equitable recoupment in respect of another time-barred overpayment. See, *e.g., Bull*, 295 U.S. at 253, 262–263, 55 S.Ct. at 697, 700–701.

overpayment, recovery of which was barred by the statute of limitations. Here no such situation exists. The taxpayer[ is] not seeking to reduce deficiencies in later years. * * * Rather, the plaintiff[ is] attempting an extension of the doctrine of equitable recoupment to the case of a refund of taxes for an otherwise barred year.

470 F.2d at 577.

The district court simply was incorrect in asserting that "the case before the court is indistinguishable from *Bull.*" 582 F.Supp. at 206.[14]

Yet equity conceivably could function in this situation to prevent the government's unjust retention of a double benefit. See *Bull,* 295 U.S. at 260, 55 S.Ct. at 699. It might have been correct for the doctrine to have been raised with respect to plaintiff's erroneous overpayment of gain in the 1975 proceeding which resolved the dispute over stock valuation for estate tax purposes.[15] Analysis of this possibility helps to clarify the proper functioning of the equitable recoupment doctrine.

Courts have not required an absolute identity of interest between the payor of the erroneous overpayment (or person making the underpayment where the government asserts recoupment) and the recipient or benefactor of recoupment. See *Stone v. White, supra; Estate of Vitt v. United States,* 706 F.2d 871 (8th Cir.1983); *McMullan v. United States,* 42 A.F.T.R.2d ¶ 78–5723 (Ct.Cl.1978); *Boyle v. United States,*

355 F.2d 233 (3d Cir.1965); *United States v. Bowcut,* 287 F.2d 654 (9th Cir.1961); *United States v. Herring,* 240 F.2d 225 (4th Cir.1957). Thus the estate potentially could have recouped Michael O'Brien's income tax overpayment against the excess estate tax owed by the estate resulting from the Tax Court's stipulated order. Assertion of the doctrine would be proper because the "main action," the government's deficiency suit, would be timely.

Courts require a "sufficient identity of interest" to apply the doctrine, *Estate of Vitt,* 706 F.2d at 875, n. 3, and a sufficient identity has been found in cases involving the sole beneficiary of an estate and the trustees of the estate, *Stone v. White, supra;* a husband's estate and a surviving spouse, *McMullan, supra;* a husband's estate and a wife's estate, *Estate of Vitt, supra;* the decedent and his estate, *Herring* and *Bowcut, supra;* and an estate and all the beneficiaries of the estate, *Boyle, supra.* The present case is most similar to that of *Boyle* where the beneficiaries of an estate were allowed to recoup the amount of a time-barred overpayment of estate tax (by the estate) against their properly assessed income tax deficiency. Here, assuming that Michael O'Brien and his two sisters were the primary beneficiaries of the Joseph O'Brien estate (the record is silent), it is the estate which would be able to recoup a time-barred overpayment of income tax against a properly assessed estate tax deficiency.[16] Plaintiff,

---

**14.** We do not address defendant's argument that the mitigation provisions, though inapplicable to these facts, provide the exclusive remedy for plaintiff's predicament, thus barring a claim based on equitable recoupment. See *Benenson v. United States,* 385 F.2d 26, 32 (2d Cir.1967); *Boyle v. United States,* 355 F.2d 233, 237–238 (3d Cir.1965); *Gooding, supra.*

**15.** It is not clear whether the Tax Court currently possesses the equitable jurisdiction necessary to apply the equitable recoupment doctrine. See Willis, *supra* note 2, at 640 n. 130. Thus, the estate may have waived the recoupment defense by litigating in the Tax Court. *Id.* at 642.

**16.** The "single transaction test," requiring that a "single transaction or taxable event ha[s] been

subjected to two taxes on inconsistent theories," *Rothensies,* 329 U.S. at 300, 67 S.Ct. at 272, also appears to be satisfied on these facts if we adopt the reasoning of the Third Circuit in *Boyle.* The *Boyle* court ruled that the "single transaction test" was satisfied where undeclared dividends were erroneously treated as assets, included as part of the corpus of decedent's estate and subjected to estate tax, but later were ruled taxable income upon distribution to the beneficiaries. The net effect, the court noted, was inconsistent tax treatment of the same fund directly resulting in an overpayment of tax by the estate. Essentially the same situation exists here where inconsistent treatment of the same stock (in terms of valuation) has directly resulted in the overpayment of tax by the beneficiaries.

however, was not in a position to invoke the doctrine of equitable recoupment below.[17]

---

The decision of the district court is reversed with directions to enter judgment for the defendant.

## APPENDIX

26 U.S.C. §§ 1311–1314 provide in pertinent part:

§ 1311. Correction of error

(a) General rule

If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) Conditions necessary for adjustment

(1) Maintenance of an inconsistent position

Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if—

(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary, or

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position maintained by the Secretary in the case described in subparagraph (A) or maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or non-recognition, as the case may be.

(2) Correction not barred at time of erroneous action

(A) Determination described in section 1312(3)(B)

In the case of a determination described in section 1312(3)(B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible or against the related taxpayer was not barred, by any law or rule of law, at the time the Secretary

---

It would not be permissible, however, assuming an identity of interest, for Michael O'Brien to have asserted recoupment himself either during the Tax Court proceeding or afterwards through a refund suit. See *supra* note 13. He could not have successfully requested that the estate pay the deficiency and that the government refund his time-barred income tax overpayment directly to him. Such a claim would not invoke the doctrine of equitable recoupment since it would not involve the recoupment of any sum as a defense by any person, but merely would involve the reviving of an untimely refund suit for income tax and payment of a timely deficiency claim. The above circumstances are different from the ordinary assertion of recoupment in a refund suit, see *id.,* where the payment of a proper deficiency claim is itself refunded because the defense of equitable recoupment relieves the taxpayer of the duty to pay the deficiency. Even if O'Brien in

the present suit were viewed as directly requesting (because of the identity of interest) a refund of the actual estate tax paid by the estate so that his claim would be a timely request for refund of estate tax, there is no authority under the refund provisions of the Internal Revenue Code that would allow a person with an "identity of interest" with the actual payor of a deficiency claim to collect the refund of such payment.

**17.** While there is much to be said for liberally construing the "single transaction" and "single taxpayer" requirements of the equitable recoupment doctrine, see Willis, *supra* note 2, at 642–646, 660–661, neither wisdom nor expediency favors a relaxing of the rule against reopening closed tax years (or the "two wrongs make a right" rule). See *supra* pp. 1048–1050; Willis, *supra* note 2, at 635 n. 86, 646–647.

first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court that the item described in section 1312(3)(B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.

(B) Determination described in section 1312(4)

In the case of a determination described in section 1312(4) (relating to disallowance of certain deductions and credits), adjustment shall be made under this part only if credit or refund of the overpayment attributable to the deduction or credit described in such section which should have been allowed to the taxpayer or related taxpayer was not barred, by any law or rule of law, at the time the taxpayer first maintained before the Secretary or before the Tax Court, in writing, that he was entitled to such deduction or credit for the taxable year to which the determination relates.

(3) Existence of relationship

In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency (except for cases described in section 1312(3)(B)), the adjustment shall not be made with respect to a related taxpayer unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a return, claim for refund, or petition (or amended petition) to the Tax Court for the taxable year with respect to which the determination is made, or if such position is not so maintained, then at the time of the determination.

§ 1312. Circumstances of adjustment

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \* \* \*

(7) Basis of property after erroneous treatment of a prior transaction

(A) General rule

The determination determines the basis of property, and in respect of any transaction on which such basis depends, or in respect of any transaction which was erroneously treated as affecting such basis, there occurred, with respect to a taxpayer described in subparagraph (B) of this paragraph, any of the errors described in subparagraph (C) of this paragraph.

(B) Taxpayers with respect to whom the erroneous treatment occurred

The taxpayer with respect to whom the erroneous treatment occurred must be

(i) the taxpayer with respect to whom the determination is made,

(ii) a taxpayer who acquired title to the property in the transaction and from whom, mediately or immediately, the taxpayer with respect to whom the determination is made derived title, or

(iii) a taxpayer who had title to the property at the time of the transaction and from whom, mediately or immediately, the taxpayer with respect to whom the determination is made derived title, if the basis of the property in the hands of the taxpayer with respect to whom the determination is made is determined under section 1015(a) (relating to the basis of property acquired by gift).

(C) Prior erroneous treatment

With respect to a taxpayer described in subparagraph (B) of this paragraph—

(i) there was an erroneous inclusion in, or omission from, gross income,

(ii) there was an erroneous recognition, or nonrecognition, of gain or loss, or

(iii) there was an erroneous deduction of an item properly chargeable to capital account or an erroneous charge to capital account of an item properly deductible.

§ 1313. Definitions

(a) Determination

For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

(2) a closing agreement made under section 7121;

(3) a final disposition by the Secretary of a claim for refund. For purposes of this part, a claim for refund shall be deemed finally disposed of by the Secretary—

(A) as to items with respect to which the claim was allowed, on the date of allowance of refund or credit or on the date of mailing notice of disallowance (by reason of offsetting items) of the claim for refund, and

(B) as to items with respect to which the claim was disallowed, in whole or in part, or as to items applied by the Secretary in reduction of the refund or credit, on expiration of the time for instituting suit with respect thereto (unless suit is instituted before the expiration of such time); or

(4) under regulations prescribed by the Secretary, an agreement for purposes of this part, signed by the Secretary and by any person, relating to the liability of such person (or the person for whom he acts) in respect of a tax under this subtitle for any taxable period.

(b) Taxpayer

Notwithstanding section 7701(a)(14), the term "taxpayer" means any person subject to a tax under the applicable revenue law.

(c) Related taxpayer

For purposes of this part, the term "related taxpayer" means a taxpayer who, with the taxpayer with respect to whom a determination is made, stood, in the taxable year with respect to which the erroneous inclusion, exclusion, omission, allowance, or disallowance was made, in one of the following relationships:

(1) husband and wife,

(2) grantor and fiduciary,

(3) grantor and beneficiary,

(4) fiduciary and beneficiary, legatee, or heir,

(5) decedent and decedent's estate,

(6) partner, or

(7) member of an affiliated group of corporations (as defined in section 1504).

§ 1314. Amount and Method of Adjustment

\* \* \* \* \* \*

(e) Taxes imposed by subtitle C

This part shall not apply to any tax imposed by subtitle C (sec. 3101 and following relating to employment taxes).[1] [§ 1314(a)–(d) merely discuss the computation of adjustments, and not whether the provisions apply in the first instance.]

---

1. Our holding renders unnecessary any discussion of the relevance of § 1314(e) to the intended scope of the mitigation provisions (Br. 21 n. 9).